IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **WISE GUYS I and WISE GUYS II**, § | |
| § | CASE NO. 3:23-cv-217-X |
| Plaintiffs, § | |
| § | |
| v. § | |
| § | |
| **META PLATFORMS, INC.**, § | |
| § | |
| Defendant. § | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO TRANSFER

Plaintiffs, Wise Guys I and Wise Guys II (collectively, "**Wise Guys**"), private groups on the social media platform informally known as Facebook, respectfully submit their opposition to the Motion to Transfer filed by Meta Platforms, Inc. ("**Meta**").

### I. FACTUAL AND PROCEDURAL BACKGROUND

*Meta Is a Social Media Platform*

1.  Meta is a social media platform with an Internet website which is open to the public. Meta allows users to create an account and enables users to communicate with other users for the primary purpose of posting information, comments, messages, or images. As a social media platform, Meta has more than 50 million monthly active users.

*Texas Law HB 20 Enacted – Fifth Circuit Holding*

2.  On or about September 9, 2021, the State of Texas enacted *AN ACT relating to censorship of or certain other interference with digital expression, including expression on social media platforms or through electronic mail messages* ("**HB 20**"), a Texas statute which regulates

large social media platforms. The law regulates social media platforms with more than 50 million active users, including Facebook, Twitter, and YouTube. Portions of HB 20 are codified at Chapter 120, Social Media Platforms, of the Texas Business & Commerce Code and Chapter 143A, Discourse on Social Media Platforms, of the Texas Civil Practice & Remedies Code. Section 7 of HB 20 addresses users' posts as follows:

> A social media platform may not censor a user, a user's expression, or a user's ability to receive the expression of another person based on:
> (1) the viewpoint of another person;
> (2) the viewpoint represented in the user's expression or another person's expression; or
> (3) a user's geographic location in this state or any part of this state.

If a social media platform violates Section 7 of HB 20 with respect to a user, that user may sue for declaratory and injunctive relief and may recover costs and attorney's fees if successful.

3.  Following a lawsuit brought by NetChoice, L.L.C., the United States District Court for the Western District of Texas issued a preliminary injunction, holding that Section 7 of HB 20 was facially unconstitutional. On September 16, 2022, the United States Court of Appeals for the Fifth Circuit vacated the preliminary injunction issued by the District Court and remanded the case for further proceedings.

### *Meta Impermissibly Censored and De-Platformed Wise Guys I*

4.  On or about October 2016, the original users established Wise Guys I on Meta. At all times relevant, the users of Wise Guys I resided in or shared and received expression in the State of Texas. During the time Wise Guys I was on Meta, users' posts on Facebook were routinely censored, i.e., had their Posts and accounts blocked, banned, restricted, and removed. Many of the users accounts which were censored by Facebook addressed issues relevant to the government

response to COVID-19. On or about October 7, 2022, Meta informed Wise Guys I that its account was de-platformed from Meta as a result of Posts by users which Meta deemed violated its "community standards."

### *Meta Impermissibly Censored and Threatened to De-Platform Wise Guys II*

5.  On or about October 11, 2022, following the de-platforming of Wise Guys I, the original users established Wise Guys II on Meta. At all times relevant, the users of Wise Guys II resided in and shared or received expression in the State of Texas. During the time Wise Guys II was on Meta, users' posts on Facebook were routinely censored, i.e., blocked, banned, restricted, and removed. Further, Meta has repeatedly threatened to de-platform Wise Guys II.

### *Viewpoint Discrimination, the First Amendment, and Meta As a Limited Public Forum*

6.  Viewpoint discrimination relates to the First Amendment to the United States Constitution. If speech is treated differently by a governmental entity based on the viewpoint it expresses, such a course of action is considered viewpoint discrimination. The government may never prohibit speech simply on account of its viewpoint.

7.  As a social media platform, Meta has been used by the federal government to censor users' posts which disagree which with the Biden Administration's position on matters of national policy, i.e., the Biden Administration has engaged in viewpoint discrimination. With regard to Wise Guys, Meta has been used by the Biden Administration to censor users' Posts which do not agree with the federal government's position on a variety of matters regarding national policy.

8.  By way of example, on or about July 15, 2021, the Biden Administration, through its Press Secretary, Jen Psaki, admitted that it was identifying "problematic" posts for Facebook to censor because the posts contained "misinformation" about COVID-19. Jen Psaki disclosed the

government's role in policing social media platforms after the Surgeon General called on social media to purge, i.e., censor, problematic posts. On or about July 15, 2021, the Biden Administration, through its Press Secretary stated as follows: "We are in regular touch with the social media platforms and those engagements typically happen through members of our senior staff and also members of our COVID-19 team – given as Dr. Murthy [the Surgeon General] conveyed, this is a big issue, of misinformation, specifically on the pandemic . . . We are flagging problematic posts for Facebook that spread disinformation"

9. On or about July 29, 2020, and on March 25, 2021, as well as on other occasions, in his testimony before Congress, Meta President Mark Zuckerberg admitted that Meta had agreed to censor speech on Facebook which did not agree with the Biden Administration's position on COVID-19. Zuckerberg stated that Facebook had removed more than "12 million posts" about COVID-19 and vaccines at the request of the Biden Administration, as Facebook expanded its list of banned posts. Meta also stated that "95 percent of the time" it places warnings on posts its fact-checkers deem false.

## LEGAL ARGUMENT
### RESPONSE POINT I
### META'S FACIAL ATTACK ON HB 20 IS UNAVAILING

10. Meta has facially attacked HB 20 as "Texas' novel social-media censorship law" and "untenable as a matter of law." [Motion, pg. 1]. The United States Court of Appeals for the Fifth Circuit vehemently disagrees. *NetChoice, L.L.C. v. Paxton*, No. 21-51178 (2022 WL 1537249) (September 16, 2022) (for purposes of discussion, reference by the Court to "Platforms" include Meta).

11. "Today we reject the idea that corporations have a freewheeling First Amendment right to censor what people say." *Id.* at 2. [Meta's] "censorship is not speech . . . And HB 20 is constitutional because it neither compels nor obstructs the Platforms' own speech in any way." *Id.* at 90.

> Further, the platforms bestride a nearly unlimited digital world in which they have more than enough opportunity to express their views in many ways other than "censorship." The Texas statute [HB 20] regulates none of their verbal "speech." What the statute does, as Judge Oldham carefully explains, is ensure that a multiplicity of voices will contend for audience attention on these platforms. **That is a pro-speech, not anti-free speech result**. *Id.* at 91 (J. Jones, concurring) (emphasis added).

12. Further, in analyzing the Platforms' [Meta's] argument, the Fifth Circuit rejected its basic premises. The Platforms [Meta] contended that its "'editorial discretion' is a separate, freestanding category of First Amendment-protected expression." The Court rejected the Platforms' [Meta's] first premise "because the Supreme Court's cases do not carve out 'editorial discretion' as a special category of First Amendment-protected expression. Instead, the Court considers editorial discretion as one relevant consideration when deciding whether a challenged regulation impermissibly compels or restricts protected speech. *Id*. (citing ***Turner Broadcasting System, Inc. v. FCC***, 512 U.S. 622 (1994)). Here, the Fifth Circuit cited . . . "Accordingly, the Platforms [Meta] cannot invoke 'editorial discretion' as if uttering some sort of First Amendment talisman to protect [its] censorship." *Id.* at 35.

13. The Fifth Circuit also found the Platforms' [Meta's] second premise flawed. Assuming, *arguendo*, that "editorial discretion" falls under the rubric of First Amendment protected expression, the Platforms' [Meta's] censorship fails. As the Court held, "the applicable inquiry is

whether [HB 20] forces [Meta] to speak or interferes with [Meta's] speech. [HB 20] does neither of those things. **It therefore passes constitutional muster.**" *Id.* at 38 (emphasis added).

*RESPONSE POINT II*
*META'S FORUM SELECTION CLAUSE IS NOT A CONTRACTUALLY VALID FORUM-SELECTION CLAUSE BECAUSE IT IS AGAINST PUBLIC POLICY*

14. Defendant Meta cites *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49 (2013) as controlling authority for the transfer of the instant case to the Northern District of California. [Motion, pg. 2, 6-7]. Further, Meta criticizes / attacks Wise Guys for filing the lawsuit in violation of the forum selection clause included in Meta's Terms of Service. Meta fails to point out, however, that its controlling authority presupposes a "contractually valid forum selection clause." 571 U.S. at 62, n.5. *Atl. Marine* did not answer under what law forum-selection clauses should be deemed invalid, see *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016) (citing *Haynsworth v. The Corp.* 121 F.3d 956, 962 (5th Cir. 1997)).

15. Defendant Meta concedes that a forum selection clause be given controlling weight in all but the most exceptional cases. [Motion, pg. 7]. The Texas Civil Practice and Remedies Code provides that just such an exceptional case.

> Sec. 143A.002. CENSORSHIP PROHIBITED. (a) A social media platform may not censor a user, a user's expression, or a user's ability to receive the expression of another person based on:
> > (1) the viewpoint of the user or another person;
> > (2) the viewpoint represented in the user's expression or another person's expression; or
> > (3) a user's geographic location in this state or any part of this state .
> (b) This section applies regardless of whether the viewpoint is expressed on a social media platform or through any other medium.

  Sec. 143A.003. WAIVER PROHIBITED. (a) A waiver or purported waiver of the protections provided by this chapter is void as unlawful and against public policy, and a court or arbitrator may not enforce or give effect to the waiver, including in an action brought under Section 143A.007, notwithstanding any contract or choice-of-law provision in a contract.

  (b) The waiver prohibition described by Subsection (a) is a public policy limitation on contractual and other waivers of the highest importance and interest to this state, and this state is exercising and enforcing this limitation to the full extent permitted by the United States Constitution and Texas Constitution.

  Sec. 143A.007 USER REMEDIES. (a) A user may bring an action against a social media platform that violates this chapter with respect to the user.

  (b) If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover:

    (1) declaratory relief under Chapter 37, including costs and reasonable attorney's fees under Chapter 37.009; and

    (2) injunctive relief.

  (c) If a social media platform fails to promptly comply with a court order in an action brought under this section, the court shall hold the social media platform in contempt and shall use all lawful measures to secure immediate compliance with the order, including daily penalties sufficient to secure immediate compliance.

  (d) A user may bring an action under this section regardless of whether an other court has enjoined the attorney general from enforcing this chapter or declared any provision of this chapter unconstitutional unless that court decision is binding on the court in which the action is brought. Tex. Civ. Prac. & Rem. Code § 143A.002 et seq.

16. The issue here is which is the more significant interest: the forum state's law—HB 20 as incorporated into the Texas Civil Practice and Remedies Code and the Texas Business and Commerce Code—or Meta's forum selection clause?

17.    When Texas Governor Greg Abbott signed HB 20 into law on September 9, 2021, he took action to protect Texans from wrongful censorship on social media platforms, including Meta.

> We will always defend the freedom of speech in Texas, which is why I am proud to sign House Bill 20 into law to protect first amendment rights in the Lone Star State. Social media websites have become our modern-day public square. They are a place for healthy public debate—but there is a dangerous movement by social media companies to silence conservative viewpoints and ideas. That is wrong and we will not allow it in Texas. *Office of Texas Governor Greg Abbott Press Release, Austin, Texas, September 9, 2021*

18.    As the Supreme Court acknowledged in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the presumption in favor of forum selection clauses in a bargained-for contract between two parties is not absolute. The Court held that such forum-selection clauses may be void if they were obtained by fraud, undue influence or unconscionable means, or if the designated forum was so substantially inconvenient or unfair that it would deprive the plaintiff of his or her "day in court." *Id*. at 13-15. Most importantly, the Court held that such forum selection clauses may be void and unenforceable *"if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision."* *Id.* at 15 (emphasis added).

19.    Further, a forum selection clause should be considered unreasonable, *inter alia*, if its enforcement would contravene a strong public policy of the forum state. ***Barnett***, 831 F.3d at 301.

20.    HB 20 is just such a statute, as incorporated into the Texas Civil Practice and Remedies Code and the Texas Business and Commerce Code. The statements of Texas Governor Greg Abbott as quoted above affirm that HB 20 is now a key aspect of the public policy of Texas. Further, the Fifth Circuit's holding ***NetChoice, L.L.C. v. Paxton***, No. 21-51178 (September 16,

2022) reinforces Texas public policy.   In sum, Meta's forum selection clause violates the public policy of the State of Texas and its enforcement contravenes the public policy of the State of Texas.

### RESPONSE POINT III
### META'S FORUM SELECTION CLAUSE IS NOT A CONTRACTUALLY VALID FORUM-SELECTION CLAUSE BECAUSE IT IS MARKEDLY DISTINGUISHABLE FROM ATLANTIC MARINE

21.   The facts in *Atl. Marine* can be distinguished from the instant case for the following reasons.  The facts in *Atl. Marine* are key to understanding the Court's reasoning. 571 U.S. at 51 - 53.  Atlantic Marine Construction Co., a Virginia corporation, entered into a subcontract with J-Crew Management, Inc., a Texas corporation.  The subcontract between the two parties included a forum selection clause, which provided that all disputes arising under the subcontract between the parties would be litigated in the courts of the State of Virginia.  There is nothing in the record to suggest (a) an unequal bargaining power between the two parties or (b) that the subcontract was presented as a "take it or leave it" scenario.  In sum, the subcontract at issue in *Atl. Marine* was not a contract of adhesion. *Id.* at 53.

22.   The issue before this Court may be formulated as follows:

To what extent should a forum selection clause in an adhesion contract trump the forum state's laws?

23.   There is a key difference between Meta's contract of adhesion and those contracts which are freely negotiated.  Meta's forum selection clause as incorporated into its Terms of Service is a contract of adhesion. [Motion, Terms of Service pg. 3 - 4].  Wise Guys was presented with Meta's Terms of Service on a "take it or leave it" basis.  Wise Guys was not allowed to negotiate any of the Terms of Service, including the forum selection clause.  The forum selection clause was

drafted by the dominant party to the transaction. Meta was able to dictate the Terms of Service to Wise Guys, including the forum selection clause.

24.     Meta acknowledges that its forum selection clause is a contract of adhesion. [Motion, Terms of Service, pg. 4]. Accordingly, the Supreme Court's holding in *Atl. Marine* is inapposite to the instant case and Meta's reliance on *Atl. Marine* to transfer this case to the Northern District of California is inappropriate.

### III.  CONCLUSION

Meta's facial attack on HB 20 is unavailing. Further, Meta's position contravenes the clearly expressed public policy and the duly enacted laws of the State of Texas. Finally, Meta's reliance on *Atl. Marine* is inapposite. For the foregoing reasons, Meta's Motion to Transfer should be denied.

Respectfully submitted,

**RALEIGH W. NEWSAM, II**
*Attorney & Counselor at Law*
6125 Luther Lane
Suite 305
Dallas, Texas 75225

Telephone:   214.533.6935
Facsimile:   214.988.1011
Email:       RaleighWNewsam@rwnlaw.com


By:   /s/ Raleigh W Newsam
      Raleigh W. Newsam, II
      Texas Bar No. 00786136

*Attorney for Wise Guys I and Wise Guys II*

## CERTIFICATE OF SERVICE

I affirm that on April 17, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court for the Northern District of Texas, Dallas Division, via the CM/ECF system which will transmit a notice of electronic filing to all CM/ECF participants.

By: /s/ Raleigh W Newsam
Raleigh W. Newsam, II